J-S34002-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: L.C., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| APPEAL OF: S.C., MOTHER | No. 3669 EDA 2016 |

Appeal from the Orders Dated October 25, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000864-2016
CP-51-DP-0000666-2015

BEFORE:  BOWES, SOLANO, AND PLATT,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED JULY 14, 2017**

S.C. ("Mother") appeals the decree terminating her parental rights to her son L.C., pursuant to 23 Pa.C.S. § 2511 (a) and (b)[1] and the permanency review order changing L.C.'s permanent placement goal from reunification to adoption pursuant to 42 Pa.C.S. § 6351.  We affirm.

L.C. was born during March 2015.  The day following his birth, the Philadelphia Department of Human Services ("DHS") received a General Protective Services ("GPS") report indicating that Mother tested positive for PCP and marijuana during the delivery.  The report also noted Mother's

_____

[1] The parental rights of S.C.'s unknown-putative father were also terminated.

* Retired Senior Judge specially assigned to the Superior Court.

history of substance abuse, untreated mental health conditions, and her prior involvement with DHS. The parental rights to three of L.C.'s siblings were previously terminated involuntarily due to Mother's drug use and mental health problems, the most recent termination having occurred approximately five months prior to L.C.'s birth.

On March 27, 2015, the juvenile court adjudicated L.C. dependent and placed him in his current pre-adoptive foster home. As the initial permanency goal was reunification, Mother was granted supervised visitation with L.C. The trial court ordered Mother to receive a drug screen, a dual diagnosis assessment, and three random drug tests through the clinical evaluation unit ("CEU"). The trial court further directed that Mother was precluded from in-home visitation until she engaged in a drug and alcohol treatment program. Mother did not comply with the substance abuse components of the plan. She left her initial CEU evaluation early, neglected to appear for the rescheduled evaluation, and made no further contact with the CEU.

On June 29, 2015, Mother was arrested for arson, reckless endangerment, criminal mischief, and making terroristic threats. She was incarcerated pending trial at Philadelphia's Riverside Correctional Facility and remained incarcerated through the termination hearing on October 25, 2016.

Prior to her arrest, Mother received a service plan that outlined her objectives to complete drug and alcohol treatment, mental health treatment,

parental training, and acquire sufficient housing. She was provided a second service plan during her incarceration. That plan required Mother to utilize programs available to her in jail. On May 26, 2016, Mother's objectives were:

> (1) to comply with all policies while incarcerated; (2) to continue to attend [a re-entry] program and to provide . . . documentation of completion; (3) to obtain and maintain employment; (4) to continue attending therapy sessions; (5) to continue to be employed while incarcerated[.]

Trial Court Opinion, 1/25/17, at unnumbered page 5.

Mother's compliance was negligible. Prior to incarceration, she failed to maintain supervised visitation with L.C., neglected to contact the agency or inquire as to L.C.'s well-being, and ignored her substance abuse treatment through CEU. Although Mother currently asserts that she utilized several programs while in prison, namely anger management, art therapy, and parenting classes, she did not document these achievements. She also claimed, without support, that she completed a course on CPR and the re-entry program entitled "Chill Out." Significantly, Mother did not claim to have completed any drug and alcohol treatment or to have addressed her mental health problems.

On September 23, 2016, DHS filed a petition for the involuntary termination of Mother's parental rights and a concomitant petition to change L.C.'s placement goal from reunification to adoption. During the ensuing hearing, Mother requested a continuance in order to document her

compliance with the service plan objectives while in prison. The trial court denied that entreaty and at the close of the evidence it granted DHS's petition for a goal change and terminated Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (a)(2), (a)(5), (a)(8) and (b). Mother filed a timely appeal.

She raises the following issues:

1. Was Mother denied a fair hearing and due process of law when the Court denied her request for a short continuance to locate the documentation of her completion of [the] case plan objectives?

2. Did the Department of Human Services (DHS) sustain the burden that Mother's rights should be terminated when there was evidence that Mother had completed and/or been actively completing her permanency goals?

Mother's brief at 4.

At the outset, we address Mother's contention that she was deprived of due process because the trial court refused her request for a continuance to gather proof of her purported progress with the service plan. Mother argues that her request for a continuance was "particularly reasonable" considering the circumstances. *See* Mother's brief at 11-12. Unfortunately for Mother, the reasonableness of her request is not the basis of our review. In actuality, we review a trial court's denial of a request for continuance for an abuse of discretion. *In re J.K.*, 825 A.2d 1277, 1280 (Pa.Super. 2003) (citation omitted). As this Court explained,

> Because a trial court has broad discretion regarding whether a request for continuance should be granted, we will not disturb its decision absent an apparent abuse of that discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will.

*Id*. With the correct standard in mind, we review Mother's grievance and find that the record reveals no abuse of discretion by the trial court in denying Mother's request for a continuance.

The following facts are relevant to our review. During the evidentiary hearing, Mother testified that she completed several programs while incarcerated that demonstrated her compliance with her objectives under the service plan. N.T., 10/25/16, at 35-36. However, she neglected to bring any documentation of her accomplishments to the hearing. Instead, she asserted that the prison would not permit her to transport the certificates of completion from the prison. *Id*. She admitted knowledge of the scheduled proceeding two months in advance and allegedly mailed the documents to a family member who was unable to bring them to court. *Id*. at 39-40. However, based on Mother's prior knowledge of the hearing, and her previous experience with termination proceedings, the trial court found that Mother's explanation lacked credibility. Specifically, the court reasoned, "[Mother] should have provided the documents to [counsel], she should have brought the documents with her from prison, or she should have had a

family member deliver the documents [for her]." *Id*. at 41. In short, the court rejected Mother's explanations and concluded, "If [Mother] was diligent, she would have had the documents, if they exist, in [DHS's] hands in time for the hearing." *Id*. at 42. Finally, in response to Mother's assertion that she did, in fact, attempt to have the documents delivered to the court, it continued, "You knew two months ago this date was coming. You've been through prior termination hearings. You're not new to the system or someone that's coming in here with clean hands, in my opinion." *Id*. Thus, the trial court denied Mother's request for a continuance and rejected her uncorroborated testimony that she completed various prison programs. *Id*. at 43.

As the certified record supports the trial court's credibility determination, we will not disturb it. We have stated, "it is the exclusive province of the [fact-finder], not the court, to decide . . . the credibility of the witnesses and the weight and effect to be given to all of the testimony." *Commonwealth v. Hall*, 867 A.2d 619, 633 (Pa.Super. 2005). Initially, the trial court did not manifest "partiality, unreasonableness, bias, or ill-will" by making a credibility determination against Mother and denying her request. *In re K.J.*, 27 A.3d 236, 243 (Pa.Super. 2011) (relating to the denial of continuance for an evidentiary hearing based on parent's alleged illness). The trial court considered evidence that demonstrated Mother's awareness of her goals and established that she had sufficient notice of the hearing to

obtain the documentation and transmit it to the court for review. Significantly, one of Mother's goals was to verify her progress with the agency. Clearly, she failed in that regard. Likewise, there is no indication that she attempted to produce the documents for counsel, and tellingly, Mother's brief does not allege prior counsel's ineffectiveness for failing to procure the purported documentation in anticipation of the hearing. As the certified record sustains the trial court's denial of Mother's motion for a continuance, there is no basis to disturb it.

In reference to Mother's remaining claims, we first observe that, to the extent that Mother challenges the juvenile court's goal change order, that issue is waived. While Mother purported to appeal the permanency review order in which the juvenile court issued the goal change, she neglected to assert any basis for reversal on appeal. At most, Mother's brief set forth the relevant statutory provisions under the Juvenile Act, *i.e.*, § 6351, and then proceeded to assail the order terminating her parental rights pursuant to the Adoption Act without leveling any specific challenge to the goal change. The failure to support her claim with relevant legal argument is fatal. ***Commonwealth v. Gould***, 912 A.2d 869, 873 (Pa.Super. 2006). ("An appellate brief must provide citations to the record and to any relevant supporting authority. The court will not become the counsel for an appellant and will not, therefore, consider issues which are not fully developed[.]").

Next, we address Mother's contention that the trial court erred in finding that DHS proved by clear and convincing evidence the statutory grounds to terminate her parental rights pursuant to 23 Pa.C.S. § 2511 (a) and (b). Again, no relief is due. The pertinent scope and standard of review of an order terminating parental rights is as follows:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re M.M.*, 106 A.3d 114, 117 (Pa.Super. 2014) (quoting *In re S.H.*, 879 A.2d 802, 805 (Pa.Super. 2005)). In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In the Interest of T.M.T.*, 64 A.3d 1119, 1124 (Pa.Super. 2013).

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re R.N.J.*, 985 A.2d 273, 276. The trial court is free to make all credibility determinations, and may believe all, part, or none of the evidence presented. *In re M.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004). If the findings of the trial court are supported by competent evidence, we will affirm even if the record could also support the opposite result. *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa.Super. 2003).

- 8 -

*Id*.

Termination of parental rights is governed by 23 Pa.C.S. § 2511, which provides in pertinent part as follows:

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . . .

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

. . . .

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of

parental rights would best serve the needs and welfare of the child.

. . . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

Termination of parental rights requires a "bifurcated analysis" under § 2511(a) and (b). ***Adoption of C.J.P.***, 114 A.3d 1046, 1049 (Pa.Super. 2015). We explained,

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

***Id***. at 1049-50 (quoting ***In re L.M.***, 923 A.2d 505, 511 (Pa. Super. 2007)).

Herein, the trial court concluded that DHS met its burden to terminate Mother's parental rights to L.C. pursuant to § 2511(a) (1), (2), (5) and (8).

*See* Trial Court Opinion/25/16, at unnumbered page 7. We need only agree with the trial court as to any one subsection of § 2511(a) as well as (b) in order to affirm the termination of parental rights. ***Adoption of C.J.P.***, *supra* at 1050. As we agree with the trial court's conclusion that DHS provided clear and convincing evidence to terminate Mother's parental rights to L.C. pursuant to § 2511(a)(1) and (b), we do not address the remaining subsections of the statute.

Section 2511(a)(1) "provide[s] grounds for termination if the parent evidenced a settled purpose of relinquishing parental claim to a child, or has refused or failed to perform parental duties for a period of at least six months." ***In re Adoption of S.P.***, 47 A.3d 817, 828 (Pa. 2012). DHS must produce clear and convincing evidence of conduct that fulfills either one of the two requirements outlined in § 2511(a)(1), it does not have to establish both. ***In re D.J.S.***, 737 A.2d 283, 285 (Pa.Super. 1999) ("parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.") While the statute targets the six months immediately preceding the filing of the petition to terminate, the trial court must consider the entire history of the case and not apply the six-month statutory period mechanically. ***In re of K.Z.S.***, 946 A.2d 753, 758 (Pa.Super. 2008).

Our Supreme Court has noted that parental duty under § 2511(a)(1) includes "an affirmative duty to love, protect and support" the child and "to make an effort to maintain communication with that child." *In re Adoption of S.P.*, *supra* at 828. When the parent's fulfillment of those duties is made more difficult by incarceration, "we must inquire whether the parent has utilized those resources at his or her command while in prison in continuing a close relationship with the child." *Id*. Finally, our Supreme Court explained,

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*Matter of Adoption of Charles E.D.M., II*, 708 A.2d 88, 92 (Pa. 1998).

In the instant case, DHS established by clear and convincing evidence that Mother failed to perform her parental duties to L.C. for more than six months prior to the date DHS filed the termination petition. L.C. was separated from mother at birth, nearly eighteen months prior to the termination petition. DHS established that Mother avoided court-ordered drug and alcohol evaluations and failed to complete her service plan goals prior to her June, 2015 incarceration. DHS Exhibit 3; N.T., 10/25/16, at 20-21. Further, Mother failed to inquire after the child's well-being or attempt to arrange visitations. *Id*. at 21. Her efforts did not improve with

- 12 -

incarceration. Recall that Mother neglected to provide DHS with documentation of any progress toward her service plan goals, and the trial court rejected Mother's claim that she did, in fact, complete various programs while in prison. Indeed, Mother's primary contention on appeal is that the trial court erred in failing to assess greater weight to her testimony regarding her accomplishments. This argument is unavailing.

As discussed *supra*, a witness' credibility is a determination for the fact-finder and will not be disturbed by this Court absent a showing of abuse of discretion. ***In re J.K.***, ***supra*** at 1280. Mother provided no documentation to establish her compliance with the plan and the trial court did not find Mother's testimony about her progress credible. N.T., 10/25/16, at 41-42. Moreover, Mother's continued interaction with drug and alcohol, her absence from treatment prior to incarceration, and her demonstrable lack of interest in L.C.'s well-being before and after incarceration further demonstrate her failure to perform her parental duties to L.C. ***See In re Adoption of S.P.***, ***supra*** at 828. Tellingly, while Mother assails the trial court for allegedly making a faulty credibility determination, she neither justified her failure to comply with the drug and alcohol treatment or the remaining components of the service plan nor explained her indifference toward L.C. Indeed, Mother did not make any remedial efforts prior to her incarceration and even to the extent that her alleged achievements in prison may be accepted as true, which the trial court declined to do, Mother made

those purported gains only as a result of her confinement. *Id*. at 25, 27-28. Furthermore, as it relates to the remaining considerations under **Matter of Adoption of Charles E.D.M., II**, **supra**, Mother proffered no explanation for her behavior and her post-separation contact was nonexistent. In sum, the certified record sustains the trial court's finding that DHS established by clear and convincing evidence that Mother failed to perform her duties at any time since L.C. was adjudicated dependent, including the final six months prior to the termination petition pursuant to § 2511(a)(1). Hence, no relief is due.

Finally, we consider whether DHS satisfied its burden pursuant to § 2511(b). Section 2511(b) requires the trial court to consider L.C.'s well-being, including the bond he may have with Mother. We have elucidated this principle as follows:

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

**Adoption of C.J.P.**, **supra** at 1054 (citations omitted).

In the instant case, L.C. has been separated from Mother since birth and, as of the date of the hearing, had no contact with her for more than one and one-half years. N.T., 10/25/16, at 21. Mother never assumed any

responsibility for addressing L.C.'s physical or emotional needs. *Id.* at 28. She is a stranger to her son. Thus, no parent-child bond exists. Accordingly, the certified record supports the trial court's determination that terminating Mother's parental rights will have no detrimental effects on L.C.

Conversely, the evidence demonstrated that L.C. shares a strong bond with his foster mother ("Foster Mother"), whom he refers to as "mom." *Id*. at 23-24, 26. L.C. has resided with Foster Mother in what is now his pre-adoptive home since he was days old. *Id*. at 23. At every permanency review hearing during the dependency proceedings, the juvenile court attested to L.C.'s safety and well-being with Foster Mother. In addition to her proactive attitude in obtaining L.C.'s medical care and addressing his potential mental health issues, Foster Mother continues to satisfy all of his daily needs. *Id*. at 23-24. In short, Foster Mother is the child's primary source of love, security, stability, and support. *Id*. at 24.

The foregoing evidence demonstrates that L.C.'s developmental, physical and emotional needs and welfare are best provided for by his current pre-adoptive environment with Foster Mother. Thus, we find that the certified record supports the trial court's conclusion that L.C.'s needs and welfare will be served by the termination of parental rights pursuant to § 2511(b), in order to facilitate his adoption.

Accordingly, we affirm the decree terminating Mother's parental rights to L.C. and the juvenile court order changing the placement goal to adoption.

Decree affirmed.   Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/14/2017